# EXHIBIT 1



# Fox Rothschild LLP
ATTORNEYS AT LAW

100 Park Avenue, Suite 1500
New York, NY 10017
Tel 212.878.7900  Fax 212.692.0940
www.foxrothschild.com

Richard B. Cohen
Direct Dial:  (212) 878-7906
Email Address:  rcohen@foxrothschild.com

March 25, 2007

**VIA EMAIL/FACSIMILE/FIRST CLASS MAIL**

Laurence S. Tauber, Esq.
Cohen Tauber Spievack & Wagner, LLP
420 Lexington Avenue, Suite 2400
New York, NY  10170

Re:     **Playmore Inc., and Waldman Publishing Corp.**

Dear Larry:

As you know, this firm represents Playmore Inc. ("Playmore").  For more than 30 years, Playmore and your client, Waldman Publishing Corp. ("Waldman"), which had previously been independent publishers and direct competitors, have been equal partners in the development, copyrighting, trademarking, production, marketing, distribution and sales of thousands of products, including, among other things, children's books.  This long-term partnership has generally been successful and profitable for both partners, who have always shared equally in the profits and losses of the partnership, and joined forces in the legal battles to protect the partnership.

In the past 30 plus years, both partners have always proceeded cooperatively and in furtherance of their fiduciary duties.  The business has prospered and both parties conduct periodic reconciliations and adjustments of all costs and expenses to insure an equal sharing of all profits and losses, with financial information being exchanged.  There has never been a raised issue of mistrust between Playmore and Waldman, or nonpayment from Playmore to Waldman upon the terms which had been agreed-upon and in place for over 30 years.

Late on March 16, 2007, without comment or explanation, your partner, Jerry Cohen, emailed a purported "term sheet" to Playmore, along with a purported "Distribution Agreement," effectively demanding that the terms of business between Playmore and Waldman that have been in place for more than 30 years be immediately altered effective retroactively to March 1st.  He stated that Waldman had not yet reviewed these documents, and requested merely that Playmore call him or Waldman with any questions.  At or about the same time, Waldman announced to Playmore that it had closed for 10 days the Massachusetts warehouse where the products are stored for fulfillment of customer orders (the

NY1 27928v2 03/25/07                    A Pennsylvania Limited Liability Partnership

California        Delaware        Florida        Nevada        New Jersey        New York        Pennsylvania



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Laurence S. Tauber, Esq.
March 25, 2007
Page 2

"warehouse"), for alleged "inventory." Historically, the inventory process has been conducted over the course of a few days, planned out 4 weeks in advance, and generally over a weekend, to avoid disrupting business operations, and to avoid stopping the shipment of product to customers. A 10-day inventory process has the effect, if not the intent, of damaging customer relations and irreparably harming the business.

Waldman further informed Playmore at that time that it would cease shipping all of the partnership's products already received and in the warehouse. This included approximately two million dollars of product orders, which needed to be shipped within 30-45 days. Waldman also, inexplicably, directed printers in China and Indonesia not to ship direct fob orders, worth approximately $200,000, to the partnership's customers, who were waiting for them. This last act has no conceivable relevance to conducting inventory at the Massachusetts warehouse.

Waldman has expressed its desire this past week of selling its assets. At the meeting on Friday between our clients, Playmore made it clear that it is interested in making such an acquisition, and is now awaiting your client's production of accurate financial and book value information, which should be readily available since you and your client have both noted that your client "has done all its research," and has retained a business consultant, and that dealings with potential third-party purchasers is well under way.

However, because of the unilateral, precipitous and unreasonable actions taken by Waldman on or about March 16th, as set forth above, the viability and health of the entire partnership business has been disrupted and is in dire jeopardy. It appears that Waldman has taken these actions because it is unhappy with the prevailing terms and conditions under which the parties have been doing business for over 30 years, and is seeking to re-negotiate these terms with Playmore. Playmore is ready, willing and able to re-negotiate these terms and conditions going forward. However, orders already placed by customers prior to March 17th <u>must</u> be fulfilled as per the ongoing terms in place for more than 30 years between Playmore and Waldman, which were in place while the orders were received by Playmore. The actions taken by Waldman at or about March 16th have halted the shipment of product to customers who had placed orders before that date. These customers have enforceable purchase order contracts which must be honored, as this has been understood by Playmore and Waldman for more than 30 years, or these customers will cease being customers (which is already happening), and can seek damages for breach of contract.

Waldman's announced 10-day time frame for doing inventory is now over, Waldman will have access to the AS400 computer system Monday morning, March 26th, and Waldman must immediately resume shipping and otherwise fulfilling customer orders noted above, under the terms and conditions prevailing between Playmore and Waldman for the past 30 or more years. Waldman's refusal to honor these orders will continue to cause irreparable harm to the business. We expect confirmation of this by the close of business on March 27th.

NY1 27928v2 03/25/07



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Laurence S. Tauber, Esq.
March 25, 2007
Page 3

# *REDACTED*

Please be advised that in the event that Waldman does not resume shipping as described above, and/or Waldman and Playmore are unable to re-negotiate the terms and conditions for all new or future orders, Playmore reserves the right to take all legal actions to protect its business, including without limitation, printing and selling the products to fulfill and satisfy customer orders, consistent with its statutory and other legal rights and the existing agreements between the parties, including the 1985 written agreement, and will account to Waldman as provided by law.

Please be further advised that Waldman is to preserve all books and records relevant to this matter, in whatever form or format, hard copy or electronically stored.

Nothing set forth herein shall be deemed a waiver of any rights possessed by Playmore, each of which is hereby reserved.

Very truly yours,

Richard B. Cohen

cc:    Mr. Jon K. Horwich

# EXHIBIT 2

## Larry Tauber

**From:**      Cohen, Richard B. [RCohen@foxrothschild.com]
**Sent:**      Tuesday, March 27, 2007 5:28 PM
**To:**        Larry Tauber
**Subject:** RE: Playmore/Waldman

Larry:  As my letter made clear, the issues set forth therein require immediate attention.  Engaging in
discovery at this point is not warranted, nor a useful expenditure of time and resources.  We, too, have
information and document requests of your client, because we understand that your client is in
possession of documents/information relating to surreptitious actions it has taken recently which would
appear to constitute, at a minimum, a breach of fiduciary duty.  Our client does not wish to engage in a
unilateral document production.  If we can move forward on the terms set forth in my letter, we can then
discuss where we stand with respect to production of documents relevant to an asset sale.

Rich

---

**From:** Larry Tauber [mailto:ltauber@ctswlaw.com]
**Sent:** Tuesday, March 27, 2007 11:27 AM
**To:** Cohen, Richard B.
**Subject:** RE: Playmore/Waldman

Dear Richard:

While we are reviewing the letter you sent, I would be most appreciative if you could forward a copy of the 1985
agreement which I have not seen.

Please note also that the formal conflict waiver letter will be sent to you shortly.

Very truly yours,

Larry Tauber


Laurence S. Tauber, Esq.
Cohen Tauber Spievack & Wagner LLP
420 Lexington Avenue, Suite 2400
New York, New York 10170
direct: (212) 381-8744
fax:    (212) 586-5095
email: ltauber@ctswlaw.com


The information contained in this electronic mail transmission is confidential and intended to be sent only to the
stated recipient of the transmission. It may therefore be protected from unauthorized use or dissemination by the
attorney-client and/or attorney work-product privileges. If you are not the intended recipient or the intended
recipient's agent, you are hereby notified that any review, use, dissemination, distribution or copying of this
communication is strictly prohibited. You are also asked to notify us immediately by telephone and to delete this
transmission with any attachments and destroy all copies in any form. Thank you in advance for your cooperation.

# EXHIBIT 3

# Larry Tauber

**From:** Cohen, Richard B. [RCohen@foxrothschild.com]
**Sent:** Monday, April 02, 2007 6:39 PM
**To:** Larry Tauber
**Cc:** JonH@playmorebooks.com
**Subject:** Playmore/Waldman

Larry:

You state that "Playmore ha[s] indicated that Playmore is unwilling to enter into any agreement regarding future shipping terms and payment arrangements." This is not true. Playmore has made proposals of its own which Waldman has rejected. Playmore is still willing, in good faith, to discuss an arrangement for ongoing shipments of products that make sense for both parties.

It is also incorrect that Playmore has no long-term binding agreements with customers or that Playmore has stated it will not enter into any agreement with Waldman regarding future orders. As we have previously stated, Playmore has entered into programs and ongoing commitments with customers, all entered into during the Playmore/Waldman partnership, which must be honored under threat of legal action

With respect to your statement that Waldman intends to begin selling and distributing on its own, should Waldman do so, it has, of course, a legal obligation to account to Playmore in accordance with Playmore's copyright ownership.

Similarly, as I stated in my earlier letter to you, Playmore reserves the right to print and sell product to fulfill and satisfy customer orders, consistent with its statutory and other legal rights and the existing agreements between the parties, including the 1985 agreement and its express copyrights thereunder.

Rich


ATTENTION:

IRS CIRCULAR 230 DISCLOSURE:
Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein.
-----------------------------------------------
This e-mail contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Individual(s) named above. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering this to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify us by telephone at (215)-299-2167 or notify us by e-mail at helpdesk@foxrothschild.com. Also, please mail a hardcopy of the e-mail to Fox Rothschild LLP, 2000 Market Street, Philadelphia PA 19103-3291 via the U.S. Postal Service. We will reimburse you for all expenses incurred.

Thank you.

# EXHIBIT 4

## Larry Tauber

---

**From:**    Larry Tauber
**Sent:**    Thursday, April 05, 2007 7:22 PM
**To:**    'Cohen, Richard B.'
**Cc:**    'Michael Gober'; Steve Wagner
**Subject:** RE: Playmore/Waldman

Dear Richard:

This will respond to your e-mail of April 2, 2007.

1.      Waldman Publishing Company, Inc. ("WPC") has made reasonable offers to institute standard business terms for its sale of products (e.g., standby letters of credit or other reasonable assurances of payment and reasonable pricing terms)., Playmore, on the other hand and contrary to your assertions, has proposed unreasonable terms, with no assurances of payment, that it knew WPC could not accept.  WPC is under no obligation to accept future orders.  In is certainly under no obligation to sell products on terms it finds unacceptable or to be obligated to fill orders which may be unilaterally cancelled by Playmore at any time.

2.      Jon Horwich has represented that Playmore has no written obligations to customers and that all orders always are subject to cancellation.  If Playmore has long term written contractual obligations to customers, it should show copies of such agreements to WPC.  If it fails to do, it will be assumed that such agreements do not exist and WPC will conduct itself accordingly.  As to your anticipated reply about free discovery, let me suggest that it is past time to engage in gamesmanship.  If there are contracts relevant to the parties' relationship, now is the time to disclose them.  This goes as well for the purported 1985 agreement (see next paragraph).  .

3.      WPC has spoken to attorneys who represented it in the 1980s, who have assured WPC that no written contract was ever signed by the parties in 1985.  Again, if Playmore fails to produce such contract, it will be assumed that such contract does not exist and WPC will conduct itself accordingly.  To be absolutely clear, WPC has diligently searched its records and spoken with attorneys that represented it during that period.  It has not located any signed contract, and the attorney has confirmed that none exist.  If you have one, now is the time to produce it.

4.      We are advised by our IP counsel that WPC is the sole legal owner of the copyrights, and is not under any duty to account to Playmore.

If Jon desires to purchase product on mutually acceptable terms, please have him call Michael Gober who will be available for such a call.

Very truly yours,

Larry Tauber


Laurence S. Tauber, Esq.
Cohen Tauber Spievack & Wagner LLP
420 Lexington Avenue, Suite 2400
New York, New York 10170
direct: (212) 381-8744
fax:    (212) 586-5095
email:  ltauber@ctswlaw.com