**Fox Rothschild LLP**
ATTORNEYS AT LAW

100 Park Avenue, Suite 1500
New York, NY 10017
Tel 212.878.7900
www.foxrothschild.com

John A. Wait
Direct Dial (212) 878-7903
Internet Address: jwait@foxrothschild.com



MEMO ENDORSED 12/5/07

[handwritten endorsement]

SO ORDERED:
Hon. Andrew Jay Peck
United States Magistrate Judge

BY FAX

December 5, 2007

**VIA FACSIMILE: (212) 805-7933**
The Honorable Magistrate Judge Andrew J. Peck
United States Courthouse
500 Pearl Street Room 1370
New York, NY 10007

Re: Playmore, Inc., Publishers v. Waldman Publishing Corp.
Civil Action No. 07-3057 (LBS) (AJP)

Dear Judge Peck:

In accordance with the terms of the non-binding settlement agreement, Jon Horwich, Playmore, Inc., Publishers ("Playmore"), sent a comprehensive list of titles to Michael Gober, Waldman Publishing Corp. ("Waldman") on November 29, 2007. The list identified both the titles that should be included in the 10 "buckets" as well as those titles (such as the Great Illustrated Classics) that should be excluded.

On Monday December 3, 2007, Mr. Gober forwarded to Mr. Horwich a letter containing comments to the list. (A copy of this letter is attached for the Court's reference). Under the terms of the non-binding settlement agreement, this letter was supposed to be limited to identifying any additional titles that should be included in the buckets created by Mr. Horwich. The December 3 letter, however, raised several additional points, some of which Playmore agrees are valid and logically should be addressed now.

On Tuesday December 4, 2007, Mr. Horwich sent Mr. Gober a detailed response. (A copy of this letter is attached for the Court's reference).

Although the letters evidence certain points of disagreement, generally speaking Playmore agrees that Waldman has raised a valid point about the methodology for creating the buckets and splitting the library of works. Waldman rightly points out that in many instances two different titles, with different covers, may contain identical content. This is especially true of coloring books, activity books and puzzle books. Waldman has proposed eliminating all such titles (and their respective cover art and content) from the buckets (Waldman has labeled these items "duplications"). Playmore believes it has come up with a more sensible approach, which would permit the parties to divide this significant amount



**Fox Rothschild LLP**
ATTORNEYS AT LAW

Magistrate Judge Peck
November 5, 2007
Page 2

of content. Under Playmore's proposal, outlined in its December 4 letter, Waldman would need to identify each unique page of content that has been used multiple times in coloring books, activity books, and puzzle books. Waldman's records should enable it to complete this task. Once this occurs the parties can isolate the "unique" content and divide it into buckets.

Although I am reluctant to ask for more time, it appears that there are a few issues that the parties need to satisfactorily address before Playmore can create the 10 buckets and move forward with the division. The largest issue concerns the division of the works that Waldman has labeled as duplications and which Playmore agrees cannot be split solely by title because both parties might wind up with a different title and/or different cover – containing identical content.

It is my hope that the parties can come up with a mutually agreeable proposal to resolve this issue. I think the first question is whether Waldman does in fact have the ability to identify the unique content within the list of duplicate titles. If so, it should move forward with identifying this content.

Finally, it is likely that Waldman and Playmore may never agree on certain minor points such as which titles must be kept together as a series. The recent letters evidence that Waldman may have a much broader sense of what types of titles must be kept together than Playmore. On these points some deference should be given to Playmore, because Playmore will create the buckets and Waldman will choose 7 of the 10. Playmore will of course endeavor to keep series together where it makes sense to do so, but should not be required to obtain Waldman's agreement on this issue.

In closing, Playmore proposes that the parties be given a few additional days to resolve the issue as to how to deal with the "duplications" identified by Waldman. Any resolution should strive to divide these works while avoiding a situation where both parties end up in possession of identical content subject to copyright.

Respectfully submitted,

John A. Wait
Enc.
cc: Steven Wagner, Esq. (by email)

Michael Gober
Waldman Publishing Corp.
570 Seventh Ave., Suite 800
New York, NY 10018
email: michael@waldmanbooks.com

December 3, 2007

To: Jon Horwich
Playmore Inc., Publishers
*Via email: jonh@playmorebooks.com*

Subject: Your list of "titles" for the 70/30 split

Jon,

I received and reviewed your list of titles (the "List"). As Judge Peck requested, I am sending to you, with a copy to the judge, my comments to the List.

Duplications

As you know, the product line consists of works where the same content has been re-used for various different products. Hence, while in the publishing world a book (that is, a title) is typically unique, this is not the case with the Waldman product line. There are pages, puzzles, and covers that are re-used, or duplicated, in various formats and various products. The List, however, treats each duplicate as a distinct title.

If you recall at our first meeting with Judge Peck, the discrepancy between Playmore's estimate of 2000 titles and Waldman's estimate of approximately 400 was noted and discussed. We have now corroborated that your inclusion of many duplicates explains the bulk of the discrepancy between the two numbers. The List is substantially reduced after removal of duplicate content, discontinued content, as well as the content we have already agreed upon. I have attached a modified list so that you can easily see the various distinctions, which are further explained below.

Also, to serve as an example of the duplication throughout the product line, I attach a photocopy of a line art board from a piece of line art called "Boy in Bed" and, from Waldman's handwritten files, the back of the art board for this line art (with my descriptions in black marker) noting some of the many series in which this piece of line art has been used and reused.

Waldman's position is that treating duplicates as distinct titles undermines the core premise of splitting the works. The same content has been used for many products. If Waldman gets one book using specific puzzles and artwork in Format A, and Playmore

1

gets another book using the same puzzles and artwork in Format B, then the property itself, i.e., the rights to the content, will not be split, but rather shared. If that were the outcome, then we would have co-ownership once again, and will have not accomplished our objective of reaching a split. We have designated these books as "DUPL" in order to keep track of them. Where the information is readily available to us, we have also indicated what products or materials the duplicated items are derived from. However, due to the time constraints, this analysis is not yet comprehensive

**Translated Works**

This problem also pertains to any translations of content. In your list, you include translations as separate titles, although the artwork is the same as in the original English language title and the rights to the translation should be derived from rights to the original content. Hence, these titles also cannot be included in the List and, as you will see, were designated as duplicates.

**Treatment of Series and/or Assortments**

Your list also raises questions about the distinction between a "title" (although, as I make clear above, the use of such a term can be misleading) and an assortment or series of books. As you know, a series is a set of books with a similar design, theme, etc. For example, Waldman's product line includes series 215, referring to small EVA (or foam) board books. In some cases, where a series consists of more than one set of books, a series is said to consist of multiple assortments. For example, in the case of series 215, there are 3 assortments, each consisting of 4 books, and designated as 215A, 215B, and 215C. As I made clear to you in my original proposal, the value of a book is dependent in some cases on being sold as part of a series, or, where appropriate, as part of an assortment of a series. In most cases, an individual "book" is never sold alone, but rather only and always as part of an assortment of books. For the purposes of our split, the series, or where possible, the assortments, must be kept intact.

**Treatment of "box sets"**

This problem also pertains to various designs of boxes (called "box sets") which are used to package several books together in a designed carton or kit to be sold as a single product. The value of a box set is naturally derived from the books inside it. Whoever gets the series of books as part of the split will naturally have the rights to the box set, and the box set will be worthless to the other party. It also cannot be allowed for use by the other party, since that box set will contain original content (artwork, text, etc.) from the books that belong inside the box. The modified Waldman list takes this into account. These box sets are designated with "DUPL" and will be assigned to the owner of the respective series of books.

**<u>Product which neither Playmore nor Waldman are allowed to publish</u>**

2

The List also includes titles that neither Waldman nor Playmore are allowed to print (works determined to be potentially infringing on others' works). If there is a reason you are including them, please let me know. Otherwise, they should be removed from the List. We have designated these books as "REMOVE."

(For your information, we also designated as "REMOVE" is series 7126 which you included in the list, but was never completed. If you intended to refer to something else, please let us know.)

Discontinued "titles"

The List also includes many discontinued items, referring to products that were in catalogs from as far as back as the 1980s. Obviously, discontinued items are not of equal value with currently sold items, as you yourself have stated on many occasions. Most of these discontinued items do not appear in the latest catalog that you showed to Judge Peck, and many are duplicates since their material was reused. Frankly, I would have hoped that you would have indicated to Waldman and to Judge Peck that you were intending to include all of these discontinued items, as we could have resolved this during the past weeks.

Where discontinued items are duplicative relative to the List, they should simply be removed from the List. We have designated items as "DUPL" in such cases. Where discontinued items are not duplicative, we should develop a fair solution. We have designated such items as "DISC." Please note however that due to the limited time we have, we were not able to analyze all discontinued items in terms of their original content and some on this list may in fact be duplicates of other works.

Incomplete listing of the GICs

Your listing of product associated with the GICs was incomplete. The GICs include, as already discussed, the "Moby" format (the 4500 series of the GICs) as well as the "digest size" format (the 5900 series of the GICs). Also, the box sets used for selling the GICs as a group, as they include artwork, typefaces, and the logos of the GICs, must be part of the GIC product line. This includes, for example, boxes referred to as 29-450, 29-15, 29-12, 29-17, etc.

Your list also designates the product lines identified as "225" and "226" as distinct from the GICs. Regarding the 225s, as you know, most of the interior text and art is the same as the 224H series that we have already agreed belongs to Waldman. Regarding the 226s, these are part of the GIC product line, the original interior text and art are copyrighted I. Waldman & Son (or Waldman Publishing only) and they use the same logo, styles, and Baronet trademark.

Please note that for the sake of clarity, we have designated titles already assigned to Playmore as "PLAYMORE" and titles already assigned to Waldman as "WALDMAN."

3

### Omissions from the list

Unfortunately, given that the List includes items from catalogs from twenty years ago, it was impossible to establish a comprehensive list. If either Waldman or Playmore determines that some titles were missing from the List, we will have to deal with those at that time.

### Your "insert" to the latest catalog

I understand that you provided Judge Peck with an "insert" of additional titles to be included in the catalog. As we have not been provided this insert, please send a copy via fax to me as soon as possible so that we can understand what these titles are and how they should (or should not) fit into the splitting of properties.

Finally, we have not dealt with the mechanics of splitting the joint trademarks. Let me suggest that we table that issue until we finalize the List. I look forward to hearing from you.

Sincerely,

*[signature]*

Michael Gober

4

# PLAYMORE INC., PUBLISHERS
## 58 Main Street 2nd Floor. Hackensack, NJ. 07601
### T. 201.678.2990    F. 201.678.2993

Dec 4, 2007

To: Michael Gober
Waldman Publishing.
Via email: michaelg@playmorebooks.com

Subject: response to 12/3/07 letter from M. Gober.

Michael,

Thank you for your letter of December 3rd. I have reviewed all your points and will respond in order.

Duplications

I certainly agree that content is and has been re used throughout the many years of the Playmore/Waldman partnership and product line. However, I disagree that because the inside material (or content as you refer to it) has been re used many times in several different assortments, that this renders the "titles" per my list, void.
You're not actually saying this, but in your provided title list, you take ALL of this material and put it outside the box of a "Split" and simply refer to it as "Duplicate."
I don't know what you mean by this as you don't offer any additional information other than that content continues to be re used or "duplicated."

In contrast;
Each "Title" has a unique and jointly held copyrighted cover art & design element which has value and has also been re used many times over and over again in multiple printings and through the years. The covers, which I have outlined in my title list provided to you last week, must be split in the same 70/30 agreed upon ratio.

Additionally, with regard to the content, I imagine it would be an exhaustive exercise to try and figure out which content exactly fit into which title and then try and split up the titles. What must be done is the content for these titles be considered "bulk content" and split in the same 70/30 agreed upon ratio. When reviewing your document 1.5 pages labeled DUPL, this breaks down to three (3) categories;
1. Coloring book pages.
2. Activity Book pages.
3. Puzzle Book pages.
This material must be identified by category and compiled into three bulk lots which can be split. This material does not require the material to be "claimed" exclusively by either Playmore or Waldman. The very nature of how this material has been

"duplicated" so many times in so many different types of books reinforces the fact that the material can easily be split between us both providing a working base of material for the future exclusive use of either ongoing Publishing concern.

Unfortunately, as the content, film, art boards, morgue book copies, disks, digital work, etc... has always been housed and held responsibly by Waldman, it will require Waldman to compile this entire bulk list of material. I would be more than happy to do it, but I do not have the material at my avail.

Treatment of Series and/or Assortments

I have already given this considerable thought as well as preliminary started putting certain series into the required 10 "buckets." There is no question that splitting up titles within a series does not make sense and would require additional cost in editorial to re do back cover & cross sell from many titles. I have no intention on doing this. However, I disagree with your assessment that three completely different series, ie; 215A, 215B & 215C must stay together. As the person who has been exclusively responsible for the sales & marketing of all of the product for the past 20+ years, I can tell you that this false. Each of these series are sold independent of each other and not sold as a total group. Even if they were on a very rare occasion, splitting them up properly by individual series, does not deter from the value of each. There is no confusion in the marketplace as there are at least 3 other Publishers currently producing lines identical to our series #215 and the market has no issues of confusion.

Treatment of "Box Sets"

My suggestion here would be to permanently "retire" all Box Set designs where there are multiple titles making up the box and these may fall into the 70/30 split. In the case where either Playmore or Waldman should retain 100% of the product which make up the box, that box should fall to that Publisher.

Product which neither Playmore nor Waldman are allowed to Publish

I'm aware of the situation regarding "I'm a little Tea Pot" but this relates only to the copyright song and lyrics, NOT the art. The art does not infringe on any copyright and should be split in the 70/30 agreed upon ratio. Please advise the situation with regard to series 5526 – 25901 – 3907 & 7126 as I am unaware of them.

Discontinued Titles

Your opening statement is incorrect. We spent considerable time at the conference discussing "discontinued" titles and it was agreed, and re confirmed from Judge Peck that discontinued titles should certainly remain as part of the 70/30 split and either respective Publisher can independently decide whether they want to re enter the market with this material.

### Incomplete list of the GIC's

At our conference last Thursday we reached an greement of $925 per cover for the hard cover #224 series of Classics. We did not discuss the #4500 covers, nor the #5900 covers which are completely different covers & costs than the #224 covers.
I am more than happy to work out a financial arrangement whereby Waldman Publishing can continue using these covers in the future. I believe there are 12 covers we created together for the #4500 series, and 12-18 covers for the #5900 series. We can discuss this later and add to the final settlement. In addition, the #226 Christmas Classics were omitted from our discussions as well. I have no issues

With adding the additional 3 titles from the #226 Christmas Classics to the Great Illustrated Classics to go exclusively to Waldman. We will then need to adjust the Playmore compensation to reflect 69 titles, not the 66 previously agreed to.

### Omissions from the List

We should both agree that any omissions from the final list become "retired" not usable by either Playmore or Waldman unless we mutually agree.

### Insert to the Catalog

We will fax this to you ASAP.

I am happy to discuss the splitting of jointly owned Trademarks once we have all these other issues finalized as I don't see this as a major stumbling block.

Finally, at the conference last week you had confirmed that once the inventory being taken at Ludlow was complete, the product which Playmore has already paid for and owns, will be released for immediate shipment. It is my understanding that the Inventory was completed last week. Please immediately advise on the release of this product.

Cordially,


Jon Horwich
President

# FAX TRANSMITTAL SHEET



## ANDREW J. PECK
## UNITED STATES MAGISTRATE JUDGE
## UNITED STATES DISTRICT COURT
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.:        (212) 805-7933
Telephone No.:  (212) 805-0036

Dated:  December 5, 2007                          Total Number of Pages:  10

| TO | FAX NUMBER |
|---|---|
| John A. Wait, Esq. | 212-692-0940 |
| Stephen Wagner, Esq. | 212-586-5095 |
|  |  |

# TRANSCRIPTION:

**MEMO ENDORSED 12/5/07**

As discussed telephonically with counsel, the parties shall continue to work cooperatively toward the settlement. The "bucket lists" etc. and status to be presented to the Court by 12/17 instead of prior 12/10 deadline.

Copy to:    Judge Leonard B. Sand